# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD PIKE,<br><br>        Plaintiff,<br><br>vs.<br><br>J. BRAD HESTER et al.,<br><br>        Defendants. | 3:12-cv-00283-RCJ-VPC<br><br>**ORDER** |

This case arises out of alleged defamation, illegal searches and seizures, and general harassment of an Elko County employee by several sheriff's deputies because of a private dispute between the employee and a sheriff's deputy. Pending before the Court are a Motion to Dismiss (ECF No. 13), a Motion for Issue Preclusion (ECF No. 25), which is in substance a motion for partial offensive summary judgment, and a Motion in Limine (ECF No. 34). For the reasons given herein, the Court denies the Motion to Dismiss, grants the Motion for Issue Preclusion in part, and grants the Motion in Limine in part.

## I.   FACTS AND PROCEDURAL HISTORY

### A.   The Parties

Plaintiff Richard Pike is employed by Defendant Elko County (the "County") as the Director of the City of Jackpot Recreation Center (the "Center"). (Compl. ¶ 10, May 25, 2012, ECF No. 1). Plaintiff's supervisor is the Director of Elko County Public Works, Mr. Lynn

Forsberg, who is not a party to this action. (*See id.* ¶ 19). Defendants J. Brad Hester and Sean Munson are employed by the County as deputy sheriffs with Defendant Elko County Sheriff's Office ("ECSO"). (*Id.* ¶¶ 11–12). Defendants Rick Keema and Jim Pitts are also employed by the County and ECSO as the Under-Sheriff and Sheriff, respectively, and they are alleged to be "officers" of the County as that term is used in Section 32 of the Nevada Constitution and final policymakers for the purposes of municipal liability claims under 42 U.S.C. § 1983. (*See id.* ¶¶ 13–14). Pike and Hester have a history of animosity arising out of Pike's previous supervision over Hester's minor child in Pike's capacity as assistant coach of a high school football team during the Fall of 2008. (*See id.* ¶ 18).

### B.   The First Unlawful Search

Plaintiff has had an office at the Center since about September 2007, where he keeps personal affects such as photographs. (*Id.* ¶¶ 21–23). In or about August 2011, Deputy Hester (who was at that time a sergeant), accompanied by Deputy Munson and non-party Deputy Mike Moore, unlocked one of the outer doors of the Center and searched the Center without a warrant, based upon the maliciously false pretense that Plaintiff was selling the illegal drug known as "ecstasy" to school children. (*See id.* ¶¶ 27–28, 34). Once inside the Center, Hester ordered Moore to conduct a dog sniff throughout the building. (*Id.* ¶ 29). During the dog sniff, Hester unlocked the door to Plaintiff's office and searched it, including Plaintiff's desk, without a warrant. (*Id.* ¶¶ 30, 34). During the search, Hester seized an envelope from Plaintiff's desk containing $500 that non-party James Ward had left with Plaintiff to be given to Plaintiff's God-son, Cody Ward, for travel expenses. (*Id.*). Hester then ordered Moore to perform a dog sniff of Plaintiff's office, and the dog did not react to anything in Plaintiff's office. (*Id.* ¶ 31). Hester then asked Moore if he were "sure" there was nothing in the office and asked him to perform another sniff "right here," pointing to Plaintiff's filing cabinet. (*Id.*). Moore complied, and again the dog did not react. (*Id.*). Plaintiff did not have any illegal drugs, but he suspects that Hester

1  planted illegal drugs, i.e., ecstasy, during the search, and that the dog simply failed to react to
2  them. (*See id.* ¶ 32).

3  In or about October 2011, ECSO informed Plaintiff of the August 2011 search. (*Id.* ¶ 38).
4  Plaintiff presented a grievance to non-party ECSO Lieutenant Marvin Morton about the search,
5  and Morton promised to "look into it." (*Id.* ¶ 39). Plaintiff alleges that Under-Sheriff Keema's
6  investigation into the illegal search on behalf of ECSO was intentionally deficient. (*See id.* ¶ 40).
7  However, Sheriff Pitts and Under-Sheriff Keema ultimately "sustained" the investigation,
8  meaning they found that an illegal search had occurred; still, as is their usual custom and
9  practice, they refused to properly punish Hester, but rather downplayed his illegal conduct in
10 order to shield him from civil liability and criminal prosecution, giving him only a written
11 reprimand and three days unpaid leave. (*Id.* ¶ 41).

12    **C.    The Second Unlawful Search**

13 On or about October 25, 2011, Munson, accompanied by non-party former Deputy Steve
14 Church, while in uniform, and without a warrant, picked the lock to an exterior door of the
15 Center in order to train Church how to break into the Center. (*Id.* ¶ 43). Munson and Church got
16 trapped in the Center when a door locked behind them that they could not reopen, so they called
17 Moore to free them. (*Id.* ¶ 44). Munson had broken into the Center multiple times in the past in
18 order to teach deputies how to break into buildings. (*Id.* ¶ 45). Plaintiff consented to neither the
19 October 25, 2011 search nor the August 2011 search, and Forsberg did not authorize either of
20 them. (*Id.* ¶¶ 36–37, 46–47).

21    **D.    Hester's Defamation of Plaintiff**

22 Hester ordered the illegal August 2011 search of the Center based upon the maliciously
23 false pretense that Plaintiff was selling the drug "ecstasy" to schoolchildren, which claim Hester
24 made to Forsberg, Munson, and Moore. (*Id.* ¶ 48–50). On September 22, 2011, Hester went to
25 the office of the Dean of Students and Athletic Director of Jackpot Combined School Kim Smith,

to talk about Plaintiff and Jackpot Combined School Football Coach Jorge Perez. (*Id.* ¶ 51). At the meeting, Hester maliciously told Smith that Plaintiff was a "pot head," "one of Jackpot's biggest druggies," and "just threw his bong and pipe away a couple of weeks ago." (*Id.* ¶ 52). Hester made these allegations in order to have Plaintiff removed as Head Coach of the Jackpot Football Team so that Hester could secure that position for himself. (*Id.* ¶ 53).[1] The official letter in which Smith memorialized Hester's allegations has since been widely disseminated, adversely affecting Plaintiffs personal and professional reputation. (*Id.* ¶¶ 54–55). In or about October 2011, Plaintiff and James Ward met with Lieutenant Morton to present a grievance concerning Hester's defamatory statements, and Morton promised to "look into it." (*Id.* ¶ 61). Plaintiff believes that Morton conducted an internal affairs investigation, but Pitts, Keema, ECSO, and the County took no action against Hester as a result. (*Id.* ¶¶ 62–63).

### E.   Hester's Harassment and Plaintiff's Protective Orders Against Hester

After ECSO began the internal affairs investigation of Hester, Hester began driving his ECSO vehicle to Plaintiff's place of residence and work over the span of several months, and up to seven times a day, in order to stop and stare at Plaintiff in a hostile and threatening manner. (*Id.* ¶ 64). Hester did this in order to make Plaintiff fear for his life and safety, as well as the lives and safety of those around him. (*Id.* ¶ 65).

On November 15, 2011, Plaintiff filed an application for an Order of Protection Against Stalking, Aggravated Stalking, or Harassments against Hester with the Elko County Justice Court. (*Id.* ¶ 68). Judge Al Kacin of that court entered a Temporary Order for Protection (the "First TOP") that same day. (*Id.*). At the December 12, 2011 hearing on the application, at least nine witnesses testified, and Judge Kacin later entered an Extended Order of Protection (the

---

[1] Plaintiff may have meant to allege that he was the Assistant Coach at this time. (*See id.* ¶ 18 (noting that in the Fall of 2008, Plaintiff was the Assistant Coach; *id.* ¶ 51 (noting that Perez was the football coach at the time of the September 22, 2011 meeting)).

"First EOP"), finding by a preponderance of the evidence that Hester had stalked Plaintiff in violation of Nevada Revised Statutes ("NRS") section 200.575(1). (*Id.* ¶ 69). Judge Kacin specifically found: (1) Plaintiff felt frightened and intimidated by Hester's conduct, including the illegal search of his office and the "stop and stare" incidents; (2) Hester's conduct would have intimidated a reasonable person; and (3) Hester did not have lawful authority to search Plaintiff's office and that the search was colored by Hester's animosity towards Plaintiff. (*Id.*). On March 2, 2012, Plaintiff filed a second application for an Order of Protection Against Stalking, Aggravated Stalking, or Harassments against Hester with the Elko County Justice Court. (*Id.* ¶ 70). Judge Barbara Nethery of that court entered a Temporary Order for Protection (the "Second TOP") that same day. (*Id.*).

### F.     The Present Case

Plaintiff sued the County, ECSO, and Hester, Munson, Keema, and Pitts in their official and individual capacities in this Court on ten causes of action: (1) Fourth Amendment violations pursuant to 42 U.S.C. § 1983 (all Defendants); (2) Defamation (Hester); (3) False Imprisonment (Hester); (4) Intentional Infliction of Emotional Distress ("IIED") (Hester); (5) Conversion (Hester); (6) Invasion of Privacy (Hester and Munson); (7) Negligent Hiring (Pitts, ECSO, and the County); (8) Negligent Retention (Pitts, ECSO, and the County); (9) Negligent Supervision (Pitts, ECSO, and the County); and (10) Respondeat Superior (ECSO and the County).  The County and Hester have jointly moved to dismiss.  Plaintiff has moved for offensive summary judgment as to certain issues adjudicated in the First EOP and Judge Nethery's March 28, 2012 Extended Order for Protection (the "Second EOP").  Finally, Defendants have moved to preclude admission of expert testimony by James Andre Boles.

## II.    LEGAL STANDARDS

### A.     Dismissal for Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule

of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### B.  Summary Judgment

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See*

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**C.     Motions in Limine**

A motion in limine is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence. Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1109 (9th ed. 2009). Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant

to their authority to manage trials. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c) (providing that trial should be conducted so as to "prevent inadmissible evidence from being suggested to the jury by any means")).

A motion in limine is a request for the court's guidance concerning an evidentiary question. *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In limine rulings are provisional. Such "rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

///

///

## III. ANALYSIS

### A. Dismissal

The County and Hester ask the Court to dismiss Plaintiff's state law claims under Nevada's Anti-SLAPP statute and the federal *Noerr–Pennington* doctrine. The Court will examine the motion under the state statute first.

Nevada's Anti-SLAPP statute is located in NRS sections 41.635 to 41.670, and this part of Chapter 41 is entitled "Liability of Persons Who Engage in Right to Petition." The statute provides absolute immunity from lawsuits based upon a person's good faith exercise of his or her right to petition. *See* Nev. Rev. Stat. § 41.650 ("A person who engages in a good faith communication in furtherance of the right to petition is immune from civil liability for claims based upon the communication."). A "good faith communication in furtherance of the right to petition" means any:

> 1. Communication that is aimed at procuring any governmental or electoral action, result or outcome;
>
> 2. Communication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity; or
>
> 3. Written or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law,
>
> which is truthful or is made without knowledge of its falsehood.

*Id.* § 41.637. Under state procedural law:

> when a party moves for a special motion to dismiss under Nevada's anti-SLAPP statute, it bears the initial burden of production and persuasion. This means the moving party must first make a threshold showing that the lawsuit is based on "good faith communication[s made] in furtherance of the right to petition" the government. If the moving party satisfies this threshold showing, then the burden of production shifts to the nonmoving party, who must demonstrate a genuine issue of material fact. If the nonmoving party successfully meets its burden, then the case proceeds to discovery and, potentially, trial. Otherwise, the district court must dismiss the action, and that dismissal operates as an adjudication on the merits.

*John v. Douglas Cnty. Sch. Dist.*, 219 P.3d 1276, 1282 (Nev. 2009) (citations omitted). In this Court, state law procedural rules are inapposite insofar as they conflict with the law of federal procedure. *See generally Hanna v. Plumer*, 380 U.S. 460 (1965). Although immunity from suit under state statute is a matter of substantive rights, the dismissal procedures and pleading standards in federal court are matters of federal law. Under federal law, there is no fact-based burden-shifting scheme under a motion to dismiss, but only under a motion for summary judgment. The Court must address the present motion to dismiss under the federal pleading standards, although the substantive basis for dismissal is controlled by the state statute. *See Stuborn Ltd. P'Ship v. Bernstein*, 245 F. Supp. 2d 312, 315–16 (D. Mass. 2003). In other words, Plaintiff may move to dismiss based upon the substantive standards of Nevada's Anti-SLAPP statute, but the motion is governed by the familiar procedural standards of Federal Rule 12(b)(6). *See id.* If Defendants wish the Court to make a fact-based determination under the Anti-SLAPP statutes, it may do so under a motion for summary judgment later, but it may not stay discovery under the state statute at this early stage and ask the Court to make what amounts to a Rule 56(a) determination without the benefit of any discovery. Under the familiar federal pleading standards, Plaintiff need only make out a plausible case to survive dismissal. Also, the Complaint here is verified, so if Plaintiff has made out a plausible case, then the Anti-SLAPP motion would presumably fail under the state law procedures, anyway, because Plaintiff would have carried his shifted burden of production under the *John* Court's interpretation of section 41.660.

        The County and Hester ask the Court to dismiss the state claims against them based upon statements Hester made to Kim Smith or Lynn Forsberg. The claims implicated by the present motion appear to be the second claim for defamation against Hester and the tenth claim for "respondeat superior" against the County, insofar as that claim rests upon Hester's own liability under the second claim. Plaintiff has via the Verified Complaint made a sufficient allegation and

produced sufficient evidence of malicious intent on the part of Hester to avoid dismissal of the defamation claim under Nevada's Anti-SLAPP statute. The sworn allegations indicate that Hester's alleged comments to Smith and Forsberg were not "aimed at procuring any governmental or electoral action, result or outcome" and did not concern "an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law." *See* Nev. Rev. Stat. § 41.637(1), (3). The comments could possibly be construed as the "[c]ommunication of information or a complaint to [an] employee of . . . a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity." *See id.* § 41.637(2). However, Plaintiff has sufficiently alleged (under oath) that Hester's statements to Smith were maliciously false, and that they were motivated by his animosity against Plaintiff because of his interactions with Hester's son, as well as Hester's desire to obtain the coaching position from which he aimed to get Plaintiff removed as a result of his comments. The verified allegations of Hester's harassment of Plaintiff and the issuance of two extended orders for protection against him in favor of Plaintiff after full hearings by two different judges also tend to support that good faith is a matter for a fact-finder in this case. These are sufficient allegations of a lack of good faith to survive a motion to dismiss based upon the Anti-SLAPP statute, and because the Complaint is verified it would be sufficient to show a genuine issue of material fact for trial even under the state's special procedural rules for motions to dismiss under the Anti-SLAPP statute, even if the Court were to employ the state procedural rules and determine Hester's own affidavit to be sufficient to shift the burden to Plaintiff on the good faith issue.

> Under the *Noerr-Pennington* doctrine, those who petition all departments of the government for redress are generally immune from liability. *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000). Although the *Noerr-Pennington* doctrine originally immunized individuals and entities from antitrust liability, *Noerr-Pennington* immunity now applies to claims under § 1983 that are based on the petitioning of public authorities. *Id.*

*Empress LLC v. City and Cnty. of S.F.*, 419 F.3d 1052, 1065 (9th Cir. 2005). In the present case, the only claim possibly barred by this doctrine is the defamation claim. The other claims are based not upon Defendants' statements, but their actions. For the same reason the defamation claim is sufficiently pled as against the state law Anti-SLAPP defense, it is sufficiently pled against the federal *Noerr–Pennington* defense.

### B. Preclusive Effect of the First EOP

Plaintiff asks the Court to rule that the following issues are precluded from relitigation as between Plaintiff and Hester, based upon Judge Kacin's December 14, 2011 order and Judge Nethery's March 28, 2012 order, i.e., the First EOP and Second EOP: (1) that Hester stalked Plaintiff in violation of NRS section 200.575(1); and (2) that Hester willfully engaged in a course of conduct against Plaintiff that made Plaintiff feel frightened and intimidated.[2] The Court grants the motion in part.

> "Under the federal full faith and credit statute, federal courts must give state court judgments the preclusive effect that those judgments would enjoy under the law of the state in which the judgment was rendered." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir. 2001) (citing 28 U.S.C. § 1738). Nevada applies "Nevada issue preclusion" to "determine the issue preclusive effect of a state decision." *Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 37, 215 P.3d 709, 718–19 (2009).
>
> > In Nevada, issue preclusion requires that (1) an issue be identical, (2) the initial ruling was final and on the merits, (3) the party against whom the judgment is asserted was a party or in privity with a party in the prior case, and (4) the issue was actually and necessarily litigated.
>
> *Id.* at 718 (internal quotation marks omitted).

*Mack v. Kuckenmeister*, 619 F.3d 1010, 1016 (9th Cir. 2010).

Here, Hester is the Defendant in both actions, and the First EOP and Second EOP were final judgments on the merits that were not appealed. The question is whether the two issues identified above were actually and necessarily litigated. If so, those exact issues cannot be

---

[2] It appears that Plaintiff relies directly upon the First EOP, because the Second EOP was itself issued based upon issue preclusion from the First EOP.

relitigated. The Court notes that those issues are not dispositive of any claims in the present case. However, the issues are relevant to the present claims and if precluded may be presented to the fact-finder as matters of judicial notice. The standard of proof in the present case is a preponderance of the evidence, which is the same standard that was employed in the EOP proceedings. Plaintiff adduces both orders, as well as transcripts of the respective proceedings. The orders control. The First EOP includes a finding that Hester "has committed and/or is committing or remains a threat to commit stalking, aggravated stalking, or harassment" against Plaintiff. (*See* First EOP 2, Dec. 14, 2011, ECF No. 1, at 32). In an addendum, the justice court made more specific findings:

> [T]he court has concluded that Pike has proven by a preponderance of the evidence that Hester has "stalked" him within the meaning of NRS 200.575(1), and remains a threat to subject Pike to violations of that statue. However, the court has also concluded that Hester has neither harassed nor stalked Pike in an aggravated fashion. *See* NRS 200.571; NRS 200.575(2).

(*Id.* add. 1). The justice court also found that "Hester did exceed his lawful authority as an Elko County Deputy Sheriff in wilfully engaging in a course of conduct that would cause a reasonable person to feel intimidated" and that "Hester did not have lawful authority to search Pike's office." (*Id.* add. 2).[3] These specific findings, except for the last finding insofar as it concerns an ultimate Fourth Amendment violation, are precluded from relitigation.

### C. Boles' Proffered Expert Testimony

The County, Munson, Keema, and Pitts ask the Court to exclude any proffered expert testimony by Plaintiff's witness, a local attorney, Mr. Boles. Boles' testimony is expected to consist of his own legal conclusions. Mr. Boles' Preliminary Report, which is attached to

---

[3] Although the alleged Fourth Amendment violation was not directly at issue in the justice court, the justice court does appear to have held that Hester exceeded his lawful authority as a Nevada peace officer to conduct the search. Still, because the ultimate issue (whether to issue an EOP) did not require a finding of a Fourth Amendment violation, that issue was not necessarily determined.

Plaintiff's Disclosure of Expert Witness, which is in turn attached to the present motion, indicates that Boles intends to testify as to the reasonableness of the disputed search, ECSO's practice concerning internal affairs investigations, and the First Amendment protection of Hester's speech.

The Court grants the motion in part and will not permit Mr. Boles to testify as an expert on First or Fourth Amendment issues. The Court needs no expert testimony on common issues of domestic law. *See Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997). But the Court will not at this time preclude Mr. Boles from testifying as to standards and practices with respect to police internal affairs investigations and his opinion of the sufficiency of any internal affairs investigation in the present case, subject to cross-examination for expert qualification.[4]

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 13) is DENIED.

IT IS FURTHER ORDERED that the Motion for Issue Preclusion (ECF No. 25) is GRANTED IN PART.

IT IS FURTHER ORDERED that the Motion in Limine (ECF No. 34) is GRANTED IN PART.

IT IS SO ORDERED.

Dated this 5th day of March, 2013.

_____
ROBERT C. JONES
United States District Judge

---

[4] Mr. Boles does not appear to have any particular training or experience in the area of internal affairs investigations, according to his curriculum vitae. His qualifications to testify in this area is a matter for expert witness qualification at trial. The Court will not exclude him as an expert in this area at this time.