1
2
3
4
5

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RICHARD PIKE,                           )
                                        )
                   Plaintiff,           )
                                        )        3:12-cv-00283-RCJ-VPC
          vs.                           )
                                        )
J. BRAD HESTER et al.,                  )               **ORDER**
                                        )
                   Defendants.          )
_____)

This case arises out of alleged defamation, illegal searches and seizures, and general

harassment of an Elko County employee by several sheriff's deputies because of a private dispute

between the employee and a sheriff's deputy.  Pending before the Court are Plaintiff's two

motions for partial offensive summary judgment, as well as his motion to file a supplemental

complaint.  Defendants have not timely responded or requested extensions of time to respond.

For the reasons given herein, the Court denies summary judgment to Plaintiff on the IIED claim,

grants summary judgment to Plaintiff on the qualified immunity issue, and grants Plaintiff's

motion for leave to file a supplemental complaint.

**I.      FACTS AND PROCEDURAL HISTORY**

     **A.      The Parties**

Plaintiff Richard Pike is employed by Defendant Elko County (the "County") as the

Director of the City of Jackpot Recreation Center (the "Center"). (Compl. ¶ 10, May 25, 2012,

ECF No. 1).  Plaintiff's supervisor is the Director of Elko County Public Works, Mr. Lynn

Forsberg, who is not a party to this action. (*See id.* ¶ 19).  Defendants J. Brad Hester and Sean

Munson are employed by the County as deputy sheriffs with Defendant Elko County Sheriff's

Office ("ECSO").  (*Id.* ¶¶ 11–12).  Defendants Rick Keema and Jim Pitts are also employed by

the County and ECSO as the Under-Sheriff and Sheriff, respectively, and they are alleged to be

"officers" of the County as that term is used in Section 32 of the Nevada Constitution and final

policymakers for the purposes of municipal liability claims under 42 U.S.C. § 1983. (*See id.* ¶¶

13–14).  Pike and Hester have a history of animosity arising out of Pike's previous supervision

over Hester's minor child in Pike's capacity as assistant coach of a high school football team

during the Fall of 2008. (*See id.* ¶ 18).

### B.    The First Unlawful Search

Plaintiff has had an office at the Center since about September 2007, where he keeps

personal affects such as photographs. (*Id.* ¶¶ 21–23).  In or about August 2011, Deputy Hester

(who was at that time a sergeant), accompanied by Deputy Munson and non-party Deputy Mike

Moore, unlocked one of the outer doors of the Center and searched the Center without a warrant,

based upon the maliciously false pretense that Plaintiff was selling the illegal drug known as

"ecstasy" to school children. (*See id.* ¶¶ 27–28, 34).  Once inside the Center, Hester ordered

Moore to conduct a dog sniff throughout the building. (*Id.* ¶ 29).  During the dog sniff, Hester

unlocked the door to Plaintiff's office and searched it, including Plaintiff's desk, without a

warrant. (*Id.* ¶¶ 30, 34).  During the search, Hester seized an envelope from Plaintiff's desk

containing $500 that non-party James Ward had left with Plaintiff to be given to Plaintiff's God-

son, Cody Ward, for travel expenses. (*Id.*).  Hester then ordered Moore to perform a dog sniff of

Plaintiff's office, and the dog did not react to anything in Plaintiff's office. (*Id.* ¶ 31).  Hester

then asked Moore if he were "sure" there was nothing in the office and asked him to perform

another sniff "right here," pointing to Plaintiff's filing cabinet. (*Id.*).  Moore complied, and again

1   the dog did not react. (*Id.*).  Plaintiff did not have any illegal drugs, but he suspects that Hester

2   planted illegal drugs, i.e., ecstasy, during the search, and that the dog simply failed to react to

3   them. (*See id.* ¶ 32).

4          In or about October 2011, ECSO informed Plaintiff of the August 2011 search. (*Id.* ¶ 38).

5   Plaintiff presented a grievance to non-party ECSO Lieutenant Marvin Morton about the search,

6   and Morton promised to "look into it." (*Id.* ¶ 39).  Plaintiff alleges that Under-Sheriff Keema's

7   investigation into the illegal search on behalf of ECSO was intentionally deficient. (*See id.* ¶ 40).

8   However, Sheriff Pitts and Under-Sheriff Keema ultimately "sustained" the investigation,

9   meaning they found that an illegal search had occurred; still, as is their usual custom and

10  practice, they refused to properly punish Hester, but rather downplayed his illegal conduct in

11  order to shield him from civil liability and criminal prosecution, giving him only a written

12  reprimand and three days unpaid leave. (*Id.* ¶ 41).

13         **C.     The Second Unlawful Search**

14         On or about October 25, 2011, Munson, accompanied by non-party former Deputy Steve

15  Church, while in uniform, and without a warrant, picked the lock to an exterior door of the

16  Center in order to train Church how to break into the Center. (*Id.* ¶ 43).  Munson and Church got

17  trapped in the Center when a door locked behind them that they could not reopen, so they called

18  Moore to free them. (*Id.* ¶ 44).  Munson had broken into the Center multiple times in the past in

19  order to teach deputies how to break into buildings. (*Id.* ¶ 45).  Plaintiff consented to neither the

20  October 25, 2011 search nor the August 2011 search, and Forsberg did not authorize either of

21  them. (*Id.* ¶¶ 36–37, 46–47).

22         **D.     Hester's Defamation of Plaintiff**

23         Hester ordered the illegal August 2011 search of the Center based upon the maliciously

24  false pretense that Plaintiff was selling the drug "ecstasy" to schoolchildren, which claim Hester

25  made to Forsberg, Munson, and Moore. (*Id.* ¶ 48–50).  On September 22, 2011, Hester went to

1    the office of the Dean of Students and Athletic Director of Jackpot Combined School Kim Smith,

2    to talk about Plaintiff and Jackpot Combined School Football Coach Jorge Perez. (*Id.* ¶ 51). At

3    the meeting, Hester maliciously told Smith that Plaintiff was a "pot head," "one of Jackpot's

4    biggest druggies," and "just threw his bong and pipe away a couple of weeks ago." (*Id.* ¶ 52).

5    Hester made these allegations in order to have Plaintiff removed as Head Coach of the Jackpot

6    Football Team so that Hester could secure that position for himself. (*Id.* ¶ 53).[1]  The official letter

7    in which Smith memorialized Hester's allegations has since been widely disseminated, adversely

8    affecting Plaintiffs personal and professional reputation. (*Id.* ¶¶ 54–55).  In or about October

9    2011, Plaintiff and James Ward met with Lieutenant Morton to present a grievance concerning

10   Hester's defamatory statements, and Morton promised to "look into it." (*Id.* ¶ 61).  Plaintiff

11   believes that Morton conducted an internal affairs investigation, but Pitts, Keema, ECSO, and the

12   County took no action against Hester as a result. (*Id.* ¶¶ 62–63).

13        **E.    Hester's Harassment and Plaintiff's Protective Orders Against Hester**

14              After ECSO began the internal affairs investigation of Hester, Hester began driving his

15   ECSO vehicle to Plaintiff's place of residence and work over the span of several months, and up

16   to seven times a day, in order to stop and stare at Plaintiff in a hostile and threatening manner.

17   (*Id.* ¶ 64).  Hester did this in order to make Plaintiff fear for his life and safety, as well as the

18   lives and safety of those around him. (*Id.* ¶ 65).

19              On November 15, 2011, Plaintiff filed an application for an Order of Protection Against

20   Stalking, Aggravated Stalking, or Harassments against Hester with the Elko County Justice

21   Court. (*Id.* ¶ 68).  Judge Al Kacin of that court entered a Temporary Order for Protection (the

22   "First TOP") that same day. (*Id.*).  At the December 12, 2011 hearing on the application, at least

23   _____

24              [1]Plaintiff may have meant to allege that he was the Assistant Coach at this time. (*See id.*
     ¶ 18 (noting that in the Fall of 2008, Plaintiff was the Assistant Coach); *id.* ¶ 51 (noting that
25   Perez was the football coach at the time of the September 22, 2011 meeting)).

1   nine witnesses testified, and Judge Kacin later entered an Extended Order of Protection (the

2   "First EOP"), finding by a preponderance of the evidence that Hester had stalked Plaintiff in

3   violation of Nevada Revised Statutes ("NRS") section 200.575(1). (*Id.* ¶ 69). Judge Kacin

4   specifically found: (1) Plaintiff felt frightened and intimidated by Hester's conduct, including the

5   illegal search of his office and the "stop and stare" incidents; (2) Hester's conduct would have

6   intimidated a reasonable person; and (3) Hester did not have lawful authority to search Plaintiff's

7   office and that the search was colored by Hester's animosity towards Plaintiff. (*Id.*). On March

8   2, 2012, Plaintiff filed a second application for an Order of Protection Against Stalking,

9   Aggravated Stalking, or Harassments against Hester with the Elko County Justice Court. (*Id.*

10  ¶ 70). Judge Barbara Nethery of that court entered a Temporary Order for Protection (the

11  "Second TOP") that same day. (*Id.*).

12          **F.      The Present Case**

13          Plaintiff sued the County, ECSO, and Hester, Munson, Keema, and Pitts in their official

14  and individual capacities in this Court on ten causes of action: (1) Fourth Amendment violations

15  pursuant to 42 U.S.C. § 1983 (all Defendants); (2) Defamation (Hester); (3) False Imprisonment

16  (Hester); (4) Intentional Infliction of Emotional Distress ("IIED") (Hester); (5) Conversion

17  (Hester); (6) Invasion of Privacy (Hester and Munson); (7) Negligent Hiring (Pitts, ECSO, and

18  the County); (8) Negligent Retention (Pitts, ECSO, and the County); (9) Negligent Supervision

19  (Pitts, ECSO, and the County); and (10) Respondeat Superior (ECSO and the County). The

20  County and Hester jointly moved to dismiss, and the Court denied the motion. Plaintiff moved

21  for offensive summary judgment as to certain issues adjudicated in the First EOP and Judge

22  Nethery's March 28, 2012 Extended Order for Protection (the "Second EOP"). The Court

23  granted the motion in part, ruling that certain findings by those judges could not be relitigated.

24  Defendants moved to preclude the admission of expert testimony by James Andre Boles. The

25  Court granted that motion in part and denied it in part. Plaintiff has now filed two motions for

1  offensive summary judgment and a motion for leave to amend the Complaint.

2  **II.    LEGAL STANDARDS**

3       A court must grant summary judgment when "the movant shows that there is no genuine

4  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

5  Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v.*

6  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there

7  is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A

8  principal purpose of summary judgment is "to isolate and dispose of factually unsupported

9  claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary

10  judgment, a court uses a burden-shifting scheme:

11       When the party moving for summary judgment would bear the burden of proof at
         trial, it must come forward with evidence which would entitle it to a directed verdict
12       if the evidence went uncontroverted at trial.  In such a case, the moving party has the
         initial burden of establishing the absence of a genuine issue of fact on each issue
13       material to its case.

14  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations

15  and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden

16  of proving the claim or defense, the moving party can meet its burden in two ways: (1) by

17  presenting evidence to negate an essential element of the nonmoving party's case; or (2) by

18  demonstrating that the nonmoving party failed to make a showing sufficient to establish an

19  element essential to that party's case on which that party will bear the burden of proof at trial. *See*

20  *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary

21  judgment must be denied and the court need not consider the nonmoving party's evidence. *See*

22  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

23       If the moving party meets its initial burden, the burden then shifts to the opposing party to

24  establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

25  475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party

Page 6 of  11

need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment

by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d

1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and

allegations of the pleadings and set forth specific facts by producing competent evidence that

shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and

determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are

to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely

colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   ANALYSIS**

    **A.   IIED**

In his first motion, Plaintiff asks the Court to grant him partial summary judgment on his

IIED claim based upon the preclusive effect of the First and Second EOP.  The Court denies the

motion.  Neither Judge Kacin nor Judge Nehtery ruled on any IIED claim but only made rulings

potentially relevant to it.  The Court previously noted that the First EOP included a finding that

Hester "has committed and/or is committing or remains a threat to commit stalking, aggravated

stalking, or harassment" against Plaintiff. (*See* First EOP 2, Dec. 14, 2011, ECF No. 1, at 32).  In

an addendum, the justice court made more specific findings:

> [T]he court has concluded that Pike has proven by a preponderance of the evidence
> that Hester has "stalked" him within the meaning of NRS 200.575(1), and remains
> a threat to subject Pike to violations of that statue.  However, the court has also
> concluded that Hester has neither harassed nor stalked Pike in an aggravated fashion.
> *See* NRS 200.571; NRS 200.575(2).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

(*Id.* add. 1).  The justice court also found that "Hester did exceed his lawful authority as an Elko County Deputy Sheriff in wilfully engaging in a course of conduct that would cause a reasonable person to feel intimidated" and that "Hester did not have lawful authority to search Pike's office." (*Id.* add. 2).  The Court ruled that those specific findings, except for the last finding insofar as it concerns an ultimate Fourth Amendment violation, were precluded from relitigation. But the Court also noted that because the ultimate issue in the justice court (whether to issue an EOP) did not require a finding of a Fourth Amendment violation, the Fourth Amendment issue was not necessarily determined and was not precluded from relitigation.  For the same reason, the IIED claim is not precluded from relitigation.  Like the Fourth Amendment claim, the IIED claim has never been litigated.  Although the findings in the justice court—i.e., that Hester "stalked" Pike under the meaning of that word as used in certain state statutes and that Hester exceeded his authority and acted in such a way that would cause a reasonable person to feel intimidated—may be relevant to the IIED claim, they are not determinative of it.  It is still for a jury whether Hester's actions were "extreme and outrageous" under the common law as that phrase is used in the context of an IIED claim. *See Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981).  Plaintiff has not "come forward with evidence which would entitle [him] to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480.

## B.    Qualified Immunity

Next, Plaintiff asks the Court to grant him summary judgment against the individual Defendants' (Pitts, Keema, Hester, and Munson) affirmative defense of qualified immunity.  The Court grants the motion.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48

1   (1988).  There is no respondeat superior liability under § 1983. *See Monell v. Dep't of Soc.*

2   *Servs.*, 436 U.S. 658, 691 (1978).  Natural persons sued in their individual capacities may enjoy

3   qualified immunity against claims of constitutional violations. *Kentucky v. Graham*, 473 U.S.

4   159, 166–67 (1985).  An official is not entitled to qualified immunity if: (1) there has been a

5   constitutional violation; and (2) the state of the law was clear enough at the time of the violation

6   that a reasonable person in the defendant's position would have known his actions violated the

7   plaintiff's rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Courts have discretion to address

8   the second prong of the *Saucier* test first in order to avoid unnecessary constitutional rulings.

9   *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  A "clearly established" right for the purpose of

10  qualified immunity is one that has been announced by the Supreme Court or an applicable Court

11  of Appeals, i.e., binding authority. *See Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004).

12          In order for Plaintiff to obtain offensive summary judgment on the qualified immunity

13  issue as to a given constitutional claim, he must first show he is entitled to offensive summary

14  judgment on the respective constitutional claim itself, because a constitutional violation is an

15  element of a finding of no qualified immunity. *See Saucier*, 533 U.S. at 201.  The Fourth

16  Amendment claim is based upon two allegedly unlawful searches of Plaintiff's office at the

17  Center in August 2011 and October 2011. (*See* Compl. ¶¶ 21–47).  Plaintiff provides evidence

18  that the August 2011 search of his office at the Center was done without a warrant, without

19  consent, and without the permission of Plaintiff (or even Mr. Forsberg). (*See* First EOP, ECF No.

20  57-1, at 2; Hester Disciplinary Memorandum, Jan. 17, 2012, ECF No. 57-1, at 10).  Defendants

21  have presented no evidence in opposition, and have not timely responded at all.  Plaintiff is

22  entitled to summary judgment on the claim for a Fourth Amendment violation and on the

23  qualified immunity issue.  It would have been clear to a reasonable officer that a warrantless

24  search of Plaintiff's office without consent and without an exigency was unlawful. *See, e.g.*,

25  *United States v. Ziegler*, 474 F.3d 1184, 1189–90 (9th Cir. 2007) (citing *Mancusi v. DeForte*,

1   392 U.S. 364 (1968)) (noting that there is a reasonable expectation of privacy in one's work

2   office, even if the office is shared).  Only the issue of damages remains for trial on this claim.

3            **C.     Supplemental Claims**

4        Finally, Plaintiff asks the Court to grant him leave to amend the Complaint to add four

5   supplemental claims arising out of his alleged wrongful termination and wrongful denial of

6   medical leave, which occurred after he filed the Complaint. *See* Fed. R. Civ. P. 15(d).  Plaintiff

7   alleges in the proposed supplemental complaint that Elko County Manager Robert Stokes

8   terminated Plaintiff in retaliation for having filed the present lawsuit in violation of the First

9   Amendment under § 1983 (Count 1) and because of Plaintiff's race and national origin in

10  violation of the Fourteenth Amendment under § 1983 (Count 2), that the County is also liable for

11  these violations under *Monell* (Count 3), and that Stokes and the County interfered with

12  Plaintiff's rights under the Family Medical Leave Act ("FMLA") (Count 4).

13       The Court grants the motion.  Plaintiff may file the supplemental complaint in the form it

14  exists as attached to the present motion.  The parties shall comply with Rule 26, including Rule

15  26(f), as to the supplemental claims, but additional discovery shall be limited to the new claims,

16  as discovery has closed as to the existing claims.  Although the Court is aware that the

17  supplemental claims will extend the litigation, Rule 15(d) is to be construed liberally.  The Court

18  rejects Defendants' argument that the supplemental claims are inappropriate because they ate

19  unrelated to the present action.  Defendants argue that Plaintiff was terminated because he did

20  not return to work after authorized medical leave under FMLA was exhausted.  However,

21  Plaintiff alleges that the termination was not only in violation of FMLA and the Equal Protection

22  Clause—facts not related to the present lawsuit—but also that it was partly in retaliation for

23  having filed the present lawsuit.  In any case, Rule 15(d)'s use is favored for the purpose of

24  judicial economy, and it contains no Rule 13(a)-type transactional test. *Keith v. Volpe*, 858 F.2d

25  467, 473–74 (9th Cir. 1988).

1

**CONCLUSION**

2        IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 56) is

3   DENIED.

4        IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 57) is

5   GRANTED.

6        IT IS FURTHER ORDERED that the Motion to Amend (ECF No. 58) is GRANTED.

7        IT IS SO ORDERED.

8   Dated this 25th day of April, 2013.

9

10                                             _____
                                               ROBERT C. JONES
11                                             United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25