UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| RICHARD PIKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:12-cv-00283-RCJ-VPC |
| vs. | ) | |
| | ) | |
| J. BRAD HESTER et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This case arises out of alleged defamation, illegal searches and seizures, and general harassment of an Elko County employee by several sheriff's deputies because of a private dispute between the employee and a sheriff's deputy. Pending before the Court are two motions for reconsideration. For the reasons given herein, the Court denies the motions.

I.  FACTS AND PROCEDURAL HISTORY

    A.  **The Parties**

Plaintiff Richard Pike is employed by Defendant Elko County (the "County") as the Director of the City of Jackpot Recreation Center (the "Center"). (Compl. ¶ 10, May 25, 2012, ECF No. 1). Plaintiff's supervisor is the Director of Elko County Public Works, Mr. Lynn Forsberg, who is not a party to this action. (*See id.* ¶ 19). Defendants J. Brad Hester and Sean Munson are employed by the County as deputy sheriffs with Defendant Elko County Sheriff's Office ("ECSO"). (*Id.* ¶¶ 11–12). Defendants Rick Keema and Jim Pitts are also employed by

the County and ECSO as the Under-Sheriff and Sheriff, respectively, and they are alleged to be "officers" of the County as that term is used in Section 32 of the Nevada Constitution and final policymakers for the purposes of municipal liability claims under 42 U.S.C. § 1983. (*See id.* ¶¶ 13–14). Pike and Hester have a history of animosity arising out of Pike's previous supervision over Hester's minor child in Pike's capacity as assistant coach of a high school football team during the Fall of 2008. (*See id.* ¶ 18).

**B.     The First Unlawful Search**

Plaintiff has had an office at the Center since about September 2007, where he keeps personal affects such as photographs. (*Id.* ¶¶ 21–23). In or about August 2011, Deputy Hester (who was at that time a sergeant), accompanied by Deputy Munson and non-party Deputy Mike Moore, unlocked one of the outer doors of the Center and searched the Center without a warrant, based upon the maliciously false pretense that Plaintiff was selling the illegal drug known as "ecstasy" to school children. (*See id.* ¶¶ 27–28, 34). Once inside the Center, Hester ordered Moore to conduct a dog sniff throughout the building. (*Id.* ¶ 29). During the dog sniff, Hester unlocked the door to Plaintiff's office and searched it, including Plaintiff's desk, without a warrant. (*Id.* ¶¶ 30, 34). During the search, Hester seized an envelope from Plaintiff's desk containing $500 that non-party James Ward had left with Plaintiff to be given to Plaintiff's God-son, Cody Ward, for travel expenses. (*Id.*). Hester then ordered Moore to perform a dog sniff of Plaintiff's office, and the dog did not react to anything in Plaintiff's office. (*Id.* ¶ 31). Hester then asked Moore if he were "sure" there was nothing in the office and asked him to perform another sniff "right here," pointing to Plaintiff's filing cabinet. (*Id.*). Moore complied, and again the dog did not react. (*Id.*). Plaintiff did not have any illegal drugs, but he suspects that Hester planted illegal drugs, i.e., ecstasy, during the search, and that the dog simply failed to react to them. (*See id.* ¶ 32).

In or about October 2011, ECSO informed Plaintiff of the August 2011 search. (*Id.* ¶ 38).

Plaintiff presented a grievance to non-party ECSO Lieutenant Marvin Morton about the search, and Morton promised to "look into it." (*Id.* ¶ 39). Plaintiff alleges that Under-Sheriff Keema's investigation into the illegal search on behalf of ECSO was intentionally deficient. (*See id.* ¶ 40). However, Sheriff Pitts and Under-Sheriff Keema ultimately "sustained" the investigation, meaning they found that an illegal search had occurred; still, as is their usual custom and practice, they refused to properly punish Hester, but rather downplayed his illegal conduct in order to shield him from civil liability and criminal prosecution, giving him only a written reprimand and three days unpaid leave. (*Id.* ¶ 41).

### C. The Second Unlawful Search

On or about October 25, 2011, Munson, accompanied by non-party former Deputy Steve Church, while in uniform, and without a warrant, picked the lock to an exterior door of the Center in order to train Church how to break into the Center. (*Id.* ¶ 43). Munson and Church got trapped in the Center when a door locked behind them that they could not reopen, so they called Moore to free them. (*Id.* ¶ 44). Munson had broken into the Center multiple times in the past in order to teach deputies how to break into buildings. (*Id.* ¶ 45). Plaintiff consented to neither the October 25, 2011 search nor the August 2011 search, and Forsberg did not authorize either of them. (*Id.* ¶¶ 36–37, 46–47).

### D. Hester's Defamation of Plaintiff

Hester ordered the illegal August 2011 search of the Center based upon the maliciously false pretense that Plaintiff was selling the drug "ecstasy" to schoolchildren, which claim Hester made to Forsberg, Munson, and Moore. (*Id.* ¶ 48–50). On September 22, 2011, Hester went to the office of the Dean of Students and Athletic Director of Jackpot Combined School Kim Smith, to talk about Plaintiff and Jackpot Combined School Football Coach Jorge Perez. (*Id.* ¶ 51). At the meeting, Hester maliciously told Smith that Plaintiff was a "pot head," "one of Jackpot's biggest druggies," and "just threw his bong and pipe away a couple of weeks ago." (*Id.* ¶ 52).

Hester made these allegations in order to have Plaintiff removed as Head Coach of the Jackpot Football Team so that Hester could secure that position for himself. (*Id.* ¶ 53).[1] The official letter in which Smith memorialized Hester's allegations has since been widely disseminated, adversely affecting Plaintiffs personal and professional reputation. (*Id.* ¶¶ 54–55).  In or about October 2011, Plaintiff and James Ward met with Lieutenant Morton to present a grievance concerning Hester's defamatory statements, and Morton promised to "look into it." (*Id.* ¶ 61).  Plaintiff believes that Morton conducted an internal affairs investigation, but Pitts, Keema, ECSO, and the County took no action against Hester as a result. (*Id.* ¶¶ 62–63).

### E. Hester's Harassment and Plaintiff's Protective Orders Against Hester

After ECSO began the internal affairs investigation of Hester, Hester began driving his ECSO vehicle to Plaintiff's place of residence and work over the span of several months, and up to seven times a day, in order to stop and stare at Plaintiff in a hostile and threatening manner. (*Id.* ¶ 64).  Hester did this in order to make Plaintiff fear for his life and safety, as well as the lives and safety of those around him. (*Id.* ¶ 65).

On November 15, 2011, Plaintiff filed an application for an Order of Protection Against Stalking, Aggravated Stalking, or Harassments against Hester with the Elko County Justice Court. (*Id.* ¶ 68).  Judge Al Kacin of that court entered a Temporary Order for Protection (the "First TOP") that same day. (*Id.*).  At the December 12, 2011 hearing on the application, at least nine witnesses testified, and Judge Kacin later entered an Extended Order of Protection (the "First EOP"), finding by a preponderance of the evidence that Hester had stalked Plaintiff in violation of Nevada Revised Statutes ("NRS") section 200.575(1). (*Id.* ¶ 69).  Judge Kacin specifically found: (1) Plaintiff felt frightened and intimidated by Hester's conduct, including the

---

[1] Plaintiff may have meant to allege that he was the Assistant Coach at this time. (*See id.* ¶ 18 (noting that in the Fall of 2008, Plaintiff was the Assistant Coach); *id.* ¶ 51 (noting that Perez was the football coach at the time of the September 22, 2011 meeting)).

illegal search of his office and the "stop and stare" incidents; (2) Hester's conduct would have intimidated a reasonable person; and (3) Hester did not have lawful authority to search Plaintiff's office and that the search was colored by Hester's animosity towards Plaintiff. (*Id.*). On March 2, 2012, Plaintiff filed a second application for an Order of Protection Against Stalking, Aggravated Stalking, or Harassments against Hester with the Elko County Justice Court. (*Id.* ¶ 70). Judge Barbara Nethery of that court entered a Temporary Order for Protection (the "Second TOP") that same day. (*Id.*).

### F.     The Present Case

Plaintiff sued the County, ECSO, and Hester, Munson, Keema, and Pitts in their official and individual capacities in this Court on ten causes of action: (1) Fourth Amendment violations pursuant to 42 U.S.C. § 1983 (all Defendants); (2) Defamation (Hester); (3) False Imprisonment (Hester); (4) Intentional Infliction of Emotional Distress ("IIED") (Hester); (5) Conversion (Hester); (6) Invasion of Privacy (Hester and Munson); (7) Negligent Hiring (Pitts, ECSO, and the County); (8) Negligent Retention (Pitts, ECSO, and the County); (9) Negligent Supervision (Pitts, ECSO, and the County); and (10) Respondeat Superior (ECSO and the County). The County and Hester jointly moved to dismiss, and the Court denied the motion. Plaintiff moved for offensive summary judgment as to certain issues adjudicated in the First EOP and Judge Nethery's March 28, 2012 Extended Order for Protection (the "Second EOP"). The Court granted the motion in part on March 5, 2013, ruling that certain findings by those judges could not be relitigated. Defendants moved to preclude the admission of expert testimony by James Andre Boles. The Court granted that motion in part and denied it in part. Plaintiff filed two motions for offensive summary judgment and a motion for leave to amend the Complaint. On April 26, 2013, the Court denied summary judgment to Plaintiff on the IIED claim, granted summary judgment on the qualified immunity issue, and granted Plaintiff leave to file a supplemental complaint.

Hester has asked the Court to reconsider its March 5, 2013 ruling on issue preclusion and to dismiss the entire Complaint under the doctrine of claim preclusion. The County, Munson, Keema, and Pitts ask the Court to reconsider its April 26, 2013 order.

## II.   DISCUSSION

The Court denies both motions. First, Hester argues that he has discovered new information that undermines the findings in the justice court. Hester must seek relief from judgment in that court under Nevada Rule 60(b)(2) based upon his claim of newly discovered evidence or on some other basis. If he obtains relief there, he may then petition this Court for relief from its March 5, 2013 order under Federal Rule 60(b)(5) based upon the vacation of the underlying judgment. But he cannot circumvent the res judicata and *Rooker-Feldman* doctrines by essentially asking this Court to review and/or vacate a state court order pursuant to Federal Rule 60(b)(2).

Hester misapprehends the identity-of-parties element of issue preclusion, arguing that because there are additional parties in the present case, issue preclusion does not apply, because the parties are not identical. There need only be identity of parties between the person seeking to enforce issue preclusion and the party against whom he is seeking to enforce it. The presence of additional parties here is irrelevant as to whether the issues are precluded as against Hester, because the doctrine is only concerned with Hester's previous ability to litigate the issue against Plaintiff. Of course, the issues litigated against Hester in the justice court are not precluded as against other Defendants.

Hester also misapplies the identity-of-issues element, arguing that because there are different issues involved in the present case than in the justice court action, that issue preclusion cannot apply between the cases. Hester conflates issue preclusion and claim preclusion. The identity-of-issues element simply controls what issues are and are not precluded. The Court has delineated which issues are and are not precluded based upon which issues were actually

determined in the justice court. So long as those precluded issues are relevant here, issue preclusion applies with respect to them, and they can be introduced to the fact-finder as evidence straightaway, without being litigated here, just as if the fact-finder had heard the evidence in the justice court and made the findings itself. Under Hester's proposed rule, issue preclusion would only apply when *every* issue in the two actions is the same, i.e., where *claim* preclusion applies, completely subsuming the doctrine of issue preclusion within the doctrine of claim preclusion and divesting issue preclusion of any separate application.

Finally, Hester argues that the claim preclusion and claim splitting doctrines apply to bar the Complaint. Hester argues that the justice courts' issuance of the First and Second EOP bar the present action. The Court rejects the argument. The justice court actions plainly included none of the tort claims brought here but were actions for protective orders. And the justice court almost certainly did not even have subject matter jurisdiction over his present claims, as Plaintiff has always maintained that over $10,000 is at stake. None of the claims are the same for the purposes of res judicata, and claim-splitting does not apply because there is no concurrent suit by Plaintiff on the same claims as he has brought here that would preclude the present suit were the other suit final.

Second, the County, Munson, Keema, and Pitts argue that the Court did not give them an opportunity to respond to Plaintiff's latest motions before it granted partial summary judgment to Plaintiff on April 26, 2013.[2] Movants are incorrect. The responses to Plaintiff's Motions Nos. 56 and 57 were due on April 19, 2013. Three days after the deadline ran, on April 22, 2013, the parties stipulated to an extension of time to respond until May 10, 2013, but the Court never

---

[2] Movants are only aggrieved by the Court's grant of Plaintiff's Motion No. 57 seeking summary judgment on the qualified immunity issue. The Court denied Plaintiff's Motion No 56 seeking summary judgment on the IIED claim.

approved any extension.³ Movants responded on April 26, 2013, a week after the deadline, after the Court had already entered the order on that day. The Court has an extremely full docket and will not lightly indulge lateness.

## CONCLUSION

IT IS HEREBY ORDERED that the Motions to Reconsider (ECF Nos. 65, 70) are DENIED.

IT IS SO ORDERED.

Dated this 19th day of June, 2013.

_____
ROBERT C. JONES
United States District Judge

---

³The Stipulation also wrongly stated that the original deadline was April 26, 2013.