UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD PIKE,              )<br>                            )<br>         Plaintiff,         )<br>                            )          3:12-cv-00283-RCJ-VPC<br>   vs.                      )<br>                            )<br>J. BRAD HESTER et al.,      )          **ORDER**<br>                            )<br>         Defendants.        )<br>_____) | |

This case arises out of alleged defamation, illegal searches and seizures, and general harassment of an Elko County employee by several sheriff's deputies because of a private dispute between the employee and a sheriff's deputy. Fifteen motions are pending before the Court.

I.     **FACTS AND PROCEDURAL HISTORY**

   A.     **The Parties**

Plaintiff Richard Pike was employed by Defendant Elko County (the "County") as the Director of the City of Jackpot Recreation Center (the "Center"). (Compl. ¶ 10, May 25, 2012, ECF No. 1). Plaintiff's supervisor was the Director of Elko County Public Works, Mr. Lynn Forsberg, who is not a party to this action. (*See id.* ¶ 19). Defendants J. Brad Hester and Sean Munson are employed by the County as deputy sheriffs with Defendant Elko County Sheriff's Office ("ECSO"). (*Id.* ¶¶ 11–12). Defendants Rick Keema and Jim Pitts are also employed by the County and ECSO as the Under-Sheriff and Sheriff, respectively, and they are alleged to be

"officers" of the County as that term is used in Section 32 of the Nevada Constitution and final policymakers for the purposes of municipal liability claims under 42 U.S.C. § 1983. (*See id.* ¶¶ 13–14). Pike and Hester have a history of animosity arising out of Pike's previous supervision over Hester's minor child in Pike's capacity as assistant coach of a high school football team during the Fall of 2008. (*See id.* ¶ 18).

### B. The First Unlawful Search

Plaintiff has had an office at the Center since about September 2007, where he keeps personal affects such as photographs. (*Id.* ¶¶ 21–23). In or about August 2011, Deputy Hester (who was at that time a sergeant), accompanied by Deputy Munson and non-party Deputy Mike Moore, unlocked one of the outer doors of the Center and searched the Center without a warrant, based upon the false pretense that Plaintiff was selling the illegal drug known as "ecstasy" to school children. (*See id.* ¶¶ 27–28, 34). Once inside the Center, Hester ordered Moore to conduct a dog sniff throughout the building. (*Id.* ¶ 29). During the dog sniff, Hester unlocked the door to Plaintiff's office and searched it, including Plaintiff's desk, without a warrant. (*Id.* ¶¶ 30, 34). During the search, Hester seized an envelope from Plaintiff's desk containing $500 that non-party James Ward had left with Plaintiff to be given to Plaintiff's God-son, Cody Ward, for travel expenses. (*Id.*). Hester then ordered Moore to perform a dog sniff of Plaintiff's office, and the dog did not react to anything in Plaintiff's office. (*Id.* ¶ 31). Hester then asked Moore if he were "sure" there was nothing in the office and asked him to perform another sniff "right here," pointing to Plaintiff's filing cabinet. (*Id.*). Moore complied, and again the dog did not react. (*Id.*). Plaintiff did not have any illegal drugs, but he suspects that Hester planted illegal drugs, i.e., ecstasy, during the search, and that the dog simply failed to react to them. (*See id.* ¶ 32).

In or about October 2011, ECSO informed Plaintiff of the August 2011 search. (*Id.* ¶ 38). Plaintiff presented a grievance to non-party ECSO Lieutenant Marvin Morton about the search, and Morton promised to "look into it." (*Id.* ¶ 39). Plaintiff alleges that Under-Sheriff Keema's

investigation into the illegal search on behalf of ECSO was intentionally deficient. (*See id.* ¶ 40). However, Sheriff Pitts and Under-Sheriff Keema ultimately "sustained" the investigation, meaning they found that an illegal search had occurred; still, as is their usual custom and practice, they refused to properly punish Hester, but rather downplayed his illegal conduct in order to shield him from civil liability and criminal prosecution, giving him only a written reprimand and three days unpaid leave. (*Id.* ¶ 41).

### C.   The Second Unlawful Search

On or about October 25, 2011, Munson, accompanied by non-party former Deputy Steve Church, while in uniform, and without a warrant, picked the lock to an exterior door of the Center in order to train Church how to break into the Center. (*Id.* ¶ 43). Munson and Church got trapped in the Center when a door locked behind them that they could not reopen, so they called Moore to free them. (*Id.* ¶ 44). Munson had broken into the Center multiple times in the past in order to teach deputies how to break into buildings. (*Id.* ¶ 45). Plaintiff consented to neither the October 25, 2011 search nor the August 2011 search, and Forsberg did not authorize either of them. (*Id.* ¶¶ 36–37, 46–47).

### D.   Hester's Defamation of Plaintiff

Hester ordered the illegal August 2011 search of the Center based upon the false pretense that Plaintiff was selling the drug "ecstasy" to schoolchildren, which claim Hester made to Forsberg, Munson, and Moore. (*Id.* ¶ 48–50). On September 22, 2011, Hester went to the office of the Dean of Students and Athletic Director of Jackpot Combined School Kim Smith, to talk about Plaintiff and Jackpot Combined School Football Coach Jorge Perez. (*Id.* ¶ 51). At the meeting, Hester maliciously told Smith that Plaintiff was a "pot head," "one of Jackpot's biggest druggies," and "just threw his bong and pipe away a couple of weeks ago." (*Id.* ¶ 52). Hester made these allegations in order to have Plaintiff removed as Head Coach of the Jackpot Football

Team so that Hester could secure that position for himself. (*Id.* ¶ 53).[1] The official letter in which Smith memorialized Hester's allegations has since been widely disseminated, adversely affecting Plaintiffs personal and professional reputation. (*Id.* ¶¶ 54–55). In or about October 2011, Plaintiff and James Ward met with Lieutenant Morton to present a grievance concerning Hester's defamatory statements, and Morton promised to "look into it." (*Id.* ¶ 61). Plaintiff believes that Morton conducted an internal affairs investigation, but Pitts, Keema, ECSO, and the County took no action against Hester as a result. (*Id.* ¶¶ 62–63).

### E. Hester's Harassment and Plaintiff's Protective Orders Against Hester

After ECSO began the internal affairs investigation of Hester, Hester began driving his ECSO vehicle to Plaintiff's place of residence and work up to seven times a day over the span of several months in order to stop and stare at Plaintiff in a hostile and threatening manner. (*Id.* ¶ 64). Hester did this in order to make Plaintiff fear for his life and safety, as well as the lives and safety of those around him. (*Id.* ¶ 65).

On November 15, 2011, Plaintiff filed an application for an Order of Protection Against Stalking, Aggravated Stalking, or Harassments against Hester with the Elko County Justice Court. (*Id.* ¶ 68). Judge Al Kacin of that court entered a Temporary Order for Protection (the "First TOP") that same day. (*Id.*). At the December 12, 2011 hearing on the application, at least nine witnesses testified, and Judge Kacin later entered an Extended Order of Protection (the "First EOP"), finding by a preponderance of the evidence that Hester had stalked Plaintiff in violation of Nevada Revised Statutes ("NRS") section 200.575(1). (*Id.* ¶ 69). Judge Kacin specifically found: (1) Plaintiff felt frightened and intimidated by Hester's conduct, including the illegal search of his office and the "stop and stare" incidents; (2) Hester's conduct would have

---

[1] Plaintiff may have meant to allege that he was the Assistant Coach at this time. (*See id.* ¶ 18 (noting that in the Fall of 2008, Plaintiff was the Assistant Coach); *id.* ¶ 51 (noting that Perez was the Coach at the time of the September 22, 2011 meeting)).

1  intimidated a reasonable person; and (3) Hester did not have lawful authority to search Plaintiff's
2  office and that the search was colored by Hester's animosity towards Plaintiff. (*Id.*).  On March
3  2, 2012, Plaintiff filed a second application for an Order of Protection Against Stalking,
4  Aggravated Stalking, or Harassments against Hester with the Elko County Justice Court. (*Id.*
5  ¶ 70). Judge Barbara Nethery of that court entered a Temporary Order for Protection (the
6  "Second TOP") that same day. (*Id.*).

       **F.**       **The Present Case**

8         Plaintiff sued the County, ECSO, and Hester, Munson, Keema, and Pitts in their official
9  and individual capacities in this Court on ten causes of action: (1) Fourth Amendment violations
10 pursuant to 42 U.S.C. § 1983 (all Defendants); (2) Defamation (Hester); (3) False Imprisonment
11 (Hester); (4) Intentional Infliction of Emotional Distress ("IIED") (Hester); (5) Conversion
12 (Hester); (6) Invasion of Privacy (Hester and Munson); (7) Negligent Hiring (Pitts, ECSO, and
13 the County); (8) Negligent Retention (Pitts, ECSO, and the County); (9) Negligent Supervision
14 (Pitts, ECSO, and the County); and (10) Respondeat Superior (ECSO and the County). The
15 County and Hester jointly moved to dismiss, and the Court denied the motion. Plaintiff moved
16 for offensive summary judgment as to certain issues adjudicated in the First EOP and Judge
17 Nethery's March 28, 2012 Extended Order for Protection (the "Second EOP"). The Court
18 granted the motion in part on March 5, 2013, ruling that certain findings by those judges could
19 not be relitigated. Defendants moved to preclude the admission of expert testimony by James
20 Andre Boles. The Court granted that motion in part and denied it in part. Plaintiff filed two
21 motions for offensive summary judgment and a motion for leave to amend the Complaint. On
22 April 26, 2013, the Court denied summary judgment to Plaintiff on the IIED claim, granted
23 summary judgment on the qualified immunity issue, and therefore also on his Fourth
24 Amendment claim, and granted Plaintiff leave to file a supplemental complaint. Defendants
25 have filed an interlocutory appeal on the denial of qualified immunity, and Plaintiff has filed a

Supplemental Complaint ("SC").[2] Fifteen more motions are now pending before the Court: four motions for summary judgment, three motions to strike, and eight miscellaneous motions.

## II. SUMMARY JUDGMENT STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See*

---

[2] The SC is properly entitled as a "Supplemental Complaint" but appears as an "Amended Complaint" in the electronic docket, perhaps because of administrative limitations in the CMECF system or Plaintiff's error in entering the motion electronically.

1  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

2  If the moving party meets its initial burden, the burden then shifts to the opposing party to
3  establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
4  475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party
5  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
6  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
7  versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d
8  626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment
9  by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d
10  1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and
11  allegations of the pleadings and set forth specific facts by producing competent evidence that
12  shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

13  At the summary judgment stage, a court's function is not to weigh the evidence and
14  determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477
15  U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are
16  to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely
17  colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

18  **III.    ANALYSIS**

19  **A.    Motion for Summary Judgment (ECF No. 67)**

20  First, the Court will address Defendants' (all Defendants but Hester) Motion for
21  Summary Judgment (ECF No. 67), in which they ask the Court to grant them summary judgment
22  against Plaintiff's IIED claim insofar as Plaintiff intends to hold them liable for it on a
23  respondeat superior theory based upon Hester's conduct.  Defendants are correct that the findings
24  in the state justice court are not controlling of the IIED claim.  The Court noted this in denying
25  Plaintiff's offensive motion for summary judgment on the IIED claim.  Defendants next argue

that Plaintiff has not shown the requisite level of extreme and outrageous conduct to prove an IIED claim, that he has not made the requisite showing of physical manifestation of emotional distress necessary to support the claim, and that the state law claims are barred by discretionary immunity.

The Court denies summary judgment on the issue of discretionary immunity. Defendants correctly note that police officers carrying out the policy choices of official decision makers are protected under the discretionary immunity statute so long as they do not fail to perform some specifically mandated ministerial task, *see Ransdell v. Clark County*, 192 P.3d 756, 764 (Nev. 2008), but Defendants fail to note that although abuses of discretion are protected by the statute, "bad faith" is not, *see Falline v. GNLV Corp.*, 823 P.2d 888, 891–92 (Nev. 1991). The bad faith standard is satisfied here. The *Falline* Court used personal animus by a governmental actor against a plaintiff as a specific example of bad faith that prevents discretionary immunity. *See id.* at 892 n.3 ("For example, if an administrator decides to delay or deny a claimant's benefits because of a personal dislike for the claimant, the delay or denial would be attributable to an unauthorized act of bad faith despite the fact that a denial or delay could be otherwise among the rightful prerogatives of the administrator."). Plaintiff has attested (the Complaint is verified) to his belief that Hester's personal animus towards him was the cause of the illegal search of his office—a search the Court has already ruled was illegal and not within the boundaries of qualified immunity—and other acts of harassment. And Plaintiff attests to specific reasons for the animus such that it is not speculative.

The Court also denies summary judgment on the issue of outrageousness. The abuse of the police power in furtherance of a personal vendetta easily satisfies the requirement of outrage. Repeated abuses of government power so outraged the Founders that they began a violent revolution and designed our resulting government with the chief aim of preventing such abuses. To accomplish this, they diluted governmental powers in the Constitution and restricted

governmental powers over the citizenry in specific ways via the Bill of Rights. The Fourth Amendment is pointedly directed towards preventing one of the types of abuses involved in the present case: unreasonable searches. Plaintiff has also attested to facts indicating harassment by Hester that can independently support a claim of outrage.

Finally, the Court denies summary judgment on the issue of emotional distress. Plaintiff has provided a declaration indicating not only subjective claims of distress, but physical manifestations (vomiting, weight loss, and a prescription for Valium). (*See* Pike Decl. ¶2(c), (f), Apr. 2, 2013, ECF No. 56-3).

In conclusion, Hester would not be not entitled to summary judgment against the IIED claim (Count 4) if he had joined the present motion. Of Movants, only the County and ECSO are charged with the respondeat superior claim (Count 10). As Movants note, Section 41.0335 provides immunity to sheriffs for any actions of their deputies. Nev. Rev. Stat. § 41.0335(1), (1)(a) ("No action may be brought against . . . [a] sheriff or county assessor which is based solely upon any act or omission of a deputy . . . ."). But Sheriff Pitts is not charged with respondeat superior liability for the IIED claim; only the County and ECSO are, and they are not protected by the statute. Still, the Court is not satisfied that there is any evidence that could lead a reasonable jury to conclude that the County or ECSO have a policy or practice of encouraging or permitting the kind of behavior at issue here. The only evidence concerning the County's actions or omissions concerns the present Pike–Hester situation. The organizational Defendants are therefore entitled to summary judgment as against any *Monell*-type claims.

**B.    Motions to Strike (ECF Nos. 75, 76, 77) and Motion (ECF No. 82)**

Defendants ask the Court to strike the SC and the Motion for Issue Preclusion (ECF No. 25), as well as all previous pleadings filed by Plaintiff under seal "improperly." The Court grants the motions as to the SC, but not as to the other sealed pleadings. Defendants may move to unseal the disputed filings.

1  Defendants note that the SC is materially different from the proposed supplemental complaint Plaintiff presented to the Court and requested leave to file. *Compare* Order 10:13–14, Apr. 26, ECF No. 66 ("Plaintiff may file the supplemental complaint *in the form it exists as attached to the present motion* [(ECF No. 58-1, at 8) (listing claims against the County and Robert Stokes for First Amendment Retaliation, Race/National Origin Discrimination, and Family and Medical Leave Act Interference)]." (emphasis added)), *with* Suppl. Compl. (listing those same claims against the County, Stokes, and Hester).  The Court grants the motion and dismisses the SC in its entirety, without leave to amend, for failure to comply with the Court's order under Rule 41.  When a party requires leave and receives it, it receives leave only to do what the Court permits.  The Court was clear—although counsel has an ethical duty to follow the rules even in the absence of a specific admonition—that Plaintiff only had leave to file the SC in the form in which he had presented it to the Court.  Plaintiff added Hester as a Defendant without leave of the Court.  The Court will not tolerate the parties' attempting to take more than is given.  This practice—attempting to "sneak" things past the Court—is dishonest and frankly childish, and it reflects poorly on the legal profession.  If counsel wished to supplement the Complaint in additional ways for which he required additional leave, it would have been a simple matter for him to have requested it.

Finally, the Court grants Plaintiff's Motion (ECF No. 82) in part.  Plaintiff asks the Court for permission to file documents under seal without leave if they are governed by the Confidentiality Agreement between the parties.  The Court grants this motion as to all parties for reasons of efficiency.  As noted, *supra*, the parties may move to unseal such documents if they believe they should not be sealed but asks the parties not to waste the Court's time with motions that have no real purpose but spite or harassment.  The Court denies the motion with respect to Plaintiff's request for an order ruling that the Confidentiality Agreement has been waived as to certain documents.

C. **Motion for Summary Judgment (ECF No. 79)**

Hester and the County ask the Court to dismiss the defamation and IIED claims and the corresponding components of the respondeat superior claim, based upon Nevada's Anti-SLAPP statute and the *Noerr-Pennington* doctrine. The Court denies the motion. First, the defense does not apply to the IIED claim, because the IIED claim is based upon more activity than is possibly covered by the defense, e.g., the "stalking" and illegal search(es). Second, as the Court previously noted, Plaintiff has sufficiently attested as to the malice with which Hester allegedly carried out his slander of Plaintiff such that there is a material question of fact whether the defense applies. (*See* Order 10–12, Mar. 5, 2013, ECF No. 51 (noting that because the Complaint is verified, if it made out a plausible claim of malice to survive an anti-SLAPP motion under the standards of Rule 8(a), it would also presumably survive an anti-SLAPP motion under Rule 56(a))). As the Court noted, "The verified allegations of Hester's harassment of Plaintiff and the issuance of two extended orders for protection against him in favor of Plaintiff after full hearings by two different judges also tend to support that good faith is a matter for a fact-finder in this case." (*Id.* at 12:13–15). Even assuming Defendant had satisfied its initial burden, Plaintiff has satisfied his shifted burden under either Rule 56(a) or *John v. Douglas County School District*, 219 P.3d 1276, 1282 (Nev. 2009).

D. **Motions for Summary Judgment (ECF Nos. 87, 88)**

1. **Fourth Amendment**

Defendants separately move for summary judgment against all claims. The Court will only address those claims not already adjudicated. Defendants argue that the Court should reconsider summary judgment on the Fourth Amendment claim. The Court will not reconsider. The Court granted summary judgment against the qualified immunity defense, and thereby granted offensive summary judgment on the Fourth Amendment claim, when Defendants failed to timely respond. The Court has also previously denied a motion to reconsider.

Defendants assert, with no further explanation or argument, that the Court's perception of their failure to respond was based upon "a facially-erroneous clerical error regarding the due date for Defendants' opposition briefs." The Court's perception of a late response was correct. Plaintiff filed his motion on April 2, 2013, and the electronic docket noted a due date for responses as April 19, 2013, for a total of seventeen (17) days to respond. The Local Rules give a non-movant twenty-one (21) days to respond to a motion for summary judgment, however. *See* Local R. 7-2(e). So it is correct that the Clerk (more accurately, the automated CMECF system) made a clerical error. But it is equally clear that the error resulted in no prejudice. Although the response should have been due on Tuesday, April 23, 2013 instead of Friday, April 19, 2013, Defendants did not respond until April 26, 2013, and the Court never approved any extension. It is a mystery why Defendants marked April 26, 2013 as the due date for a response to a motion filed on April 2, 2013. Twenty-four (24) days is a totally unfamiliar amount of days in any context, except for the uncommon case where there are twenty-one days to respond, the twenty-first day is a Saturday, and the following Monday is a court holiday, which circumstances are not present here. Other than to adamantly note that Local Rule 7-2(e) gives a party twenty-one (21) days to respond to a summary judgment motion and that Defendants had calendared April 26, 2013 as the due date for a response to the April 2, 2013 motion, Defendants do not explain how $2+21=26$. The Court has scoured the record for any other circumstances making the response timely and has found none. Although the magistrate judge previously granted a stipulated amendment of the Scheduling Order extending the deadline for dispositive motions, neither the original Scheduling Order nor the amendment thereto indicates any variance from the Local Rules for responses and replies.

If by "clerical error" Defendants mean to say that they accidentally filed the response late or accidentally calendared the response for the wrong day, that is not a clerical error; it is a practice error. Although of course permitted, it is a dangerous practice to file pleadings on the

very last day they are due as a matter of policy, because if the practitioner makes any minor error in calculation, there is no room for safety. Even in those cases where a court ultimately indulges the lateness, a practitioner missing a deadline because of this practice will have to litigate the issue,[3] wasting the Court's time and causing his own client additional fees that would be unnecessary were the practitioner more careful and conscientious. Benjamin Franklin's advice remains good today: "Never leave that till tomorrow which you can do today." Accordingly, the Court will not reconsider the Fourth Amendment issues.

Defendants also argue against the § 1983 claim insofar as it is based upon the alleged harassment. The Court denies the motion as against the substantive due process claim, as well. The alleged harassment, which is sufficiently factually supported by the entry of the EOP and testimony concerning the harassment, can support a claim that Hester's activity under the color of state law shocks the conscience. The claim is not barred by the *Graham* doctrine, because the harassing activity at issue covers more activity than any specific provision of the Bill of Rights, such as the Fourth or Eighth Amendments. *See Graham v. Connor*, 490 U.S. 386, 393–94 (1989). The first cause of action in the Complaint is entitled not with any cause of action but only with the jurisdictional statute, 42 U.S.C. § 1983, leaving the Court to guess at the cause of action intended by reading the allegations presented thereunder. The first cause of action identifies the "Fourth and Fourteenth Amendments" as the source of the rights to be vindicated. This usage, i.e., the juxtaposition of an amendment of the Bill of Rights (here, the Fourth Amendment) with the Fourteenth Amendment in a single phrase is a term of art typically used to indicate a right from the Bill of Rights, as incorporated against the states via the Due Process Clause of the Fourteenth Amendment. Plaintiff implies in opposition that he intended to bring a substantive due process claim. Ideally, Plaintiff should have listed a separate cause of action

---

[3]As it turns out, litigants actually care about winning and are typically unwilling to forfeit victories simply because they were won on procedural rather than substantive grounds.

listing the Due Process Clause of the Fourteenth Amendment, or simply the Fourteenth Amendment alone, as the source of the right to be vindicated.  But although the claim is inartfully pled, the Court can perceive from the first cause of action that both unlawful seizure and substantive due process claims were intended.

   **2.   IIED**

The Court has already denied summary judgment on the IIED claim. *See supra*.

   **3.   Conversion**

The Court rejects Defendants' argument that Plaintiff has no standing to assert a conversion claim based upon the taking of $500 in which he had a superior right of possession to Defendant simply because he did not have title to the money. *See* Restatement (Second) of Torts § 225 cmt. a. ("[At common law], both the bailee and bailor at will could sue either in trespass or in trover for the tortious dispossession of the bailee."); *id.* cmt. d. ("Either the person in possession of the chattel at the time of the conversion [the bailee] or the person then entitled to its immediate possession [the bailor or third-party transferee] may recover the full value of the chattel at the time and place of the conversion.").  The person who owned the money, James Ward, testified at his deposition that the money was properly in Plaintiff's possession as bailee when it was allegedly converted.

   **4.   False Imprisonment and Invasion of Privacy**

Defendants are correct that Plaintiff has not stated a prima facie case of false imprisonment against Hester.  The only allegations potentially related to this claim are the stalking allegations.  But false imprisonment requires confinement to a defined space with no reasonable means of escape, not simply harassment that might cause one to fear for his safety. "Confinement means that the plaintiff is not permitted to go beyond boundaries fixed by the defendant." Dan B. Dobbs, *The Law of Torts* § 36, at 68 (2000).  Still, "[t]he plaintiff who is detained on the street . . . may be confined even if the [defendant] does not specify the exact

limits of her free movement." *Id.* The present case must rely on the latter example, if anything. But Plaintiff does not allege that Hester confronted him and refused to let him leave in a way analogous to the above example. There is no statement or conduct alleged supporting an inference of any intent by Hester to confine Plaintiff to fixed boundaries. The Court grants summary judgment on this claim.

The Court interprets the "invasion of privacy" claim as a claim for intrusion upon the seclusion of another.[4] That cause of action consist of three elements: "1) an intentional intrusion (physical or otherwise); 2) on the solitude or seclusion of another; 3) that would be highly offensive to a reasonable person." *PETA v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1279 (Nev. 1995). "[A] plaintiff must show that he or she had an actual expectation of seclusion or solitude and that that expectation was objectively reasonable." *Id.* (citing *M&R Inv. Co.*, 748 P.2d 488, 493 (Nev. 1987). Plaintiff does not allege that Hester spied on him from any place in a manner actionable for trespass or using artificial means. He alleges, however, that the "stop-and-stare" activities happened both at Plaintiff's workplace and at his home, up to seven times per day over a period of several months, when Hester would stop and stare menacingly at Plaintiff for up to five minutes. The Court finds that a reasonable jury could find this to be an intentional and highly offensive intrusion upon Plaintiff's seclusion, at least when he was at his private residence, which is a place where Plaintiff could show both an actual and reasonable expectation of seclusion. This activity, and the alleged defamation, is also the basis for the substantive due process claim, *see supra*, which cannot be based upon acts supporting the illegal search claim, *see Graham*, 490 U.S. at 393–94.

**5.   Defamation**

Defendants argue that the alleged defamatory statements were either true or matters of

---

[4]"Invasion of privacy" refers to a class of torts with varying elements.

opinion, not fact.  First, the Court finds that the alleged comments to the school official that Plaintiff was a "pot head" and a "druggie[]" were claims of fact, i.e., that Plaintiff was a drug user, and because those statements concern the commission of a crime (possession and use of illegal drugs), they are properly alleged to be defamatory per se.  The same is true of Hester's alleged statements to Forsberg, Munson, and Moore that Plaintiff was selling the drug "ecstasy."  The Court rejects as a matter of law that the intra-corporate privilege applies to Hester's communications to Smith (the school official) or Forsberg (Plaintiff's supervisor), but accepts the defense as to Hester's statements to his fellow officers Munson and Moore, though Hester will have to prove the affirmative defense at trial. *See Simpson v. Mars, Inc.*, 929 P.2d 966, 967–68 (Nev. 1997).

       Defendants also argue that Plaintiff must show actual malice, because Plaintiff is a public figure, and that the alleged statements were matters of public concern because they concern drug use by a high school football coach in charge of children.  The Court agrees with Defendants in part and rules that the statements were on a matter of public concern, but that Plaintiff is not a public figure for the purposes of the statements at issue.  The courts have held that collegiate and professional coaches and athletes are "limited public figures" as to statements concerning their "job performance," but not as to their private lives. *See McGarry v. Univ. of San Diego*, 64 Cal. Rptr. 3d. 467, 481 (Ct. App. 2007) (collecting cases).  The alleged defamatory statements here are outside the scope of the public component of Plaintiff's persona, even assuming the rule includes coaches at the high school level, which is doubtful.  Therefore, negligence, not malice, is the standard of fault. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991).  Still, if the statements were on a matter of public concern, the First Amendment requires that Plaintiff prove both negligence and falsity by a preponderance of the evidence to obtain special damages, and that he must prove malice by clear and convincing evidence, i.e., "the *New York Times* standard," to obtain either presumed or punitive damages. *See Gertz v. Robert Welch*, *Inc.*,

418 U.S. 323, 348–50 (1971). "Individuals' drug use, particularly where related to public safety, may be a legitimate matter of public concern." *Veilleux v. NBC*, 206 F.3d 92, 132 (1st Cir. 2000) (citing *White v. Fraternal Order of Police*, 909 F.2d 512, 517 (D.C. Cir. 1990) (drug tests performed on police officer)). The Court finds that the issue of drug use or sales by the supervisor of a dangerous activity (full contact football) performed by minors at a public school is a matter of public concern.

In summary, because he is a private plaintiff aggrieved by statements on a matter of public concern, Plaintiff will have to prove negligence and falsity by a preponderance of the evidence to recover any provable special damages, and he will have to prove malice by clear and convincing evidence if he wishes to recover presumed or punitive damages. The Court otherwise reserves this claim for the jury.

### 6.  Negligent Hiring, Supervision, and Retention

The Court grants summary judgment on the negligent hiring claim. Plaintiff provides no evidence indicating that Sheriff Pitts, ESCO, or the County had or should have had any reason to believe Hester was likely to engage in this kind of alleged malfeasance before he was hired. The Court refuses to grant summary judgment on the negligent retention and negligent supervision claims as against Pitts and ECSO, because Plaintiff sufficiently attests to facts indicating that these Defendants may have been negligent in supervising or retaining Hester after the first unlawful search was brought to ECSO's attention no later than October 2011. Hester is alleged to have engaged in the harassing conduct that led to the protective orders and finding of stalking after Plaintiff had complained to ECSO and after ECSO claimed to have dealt with the issue. The County itself, however, is entitled to summary judgment on these claims, because unlike Pitts and ECSO, the County is not alleged to have had any direct supervisory authority over Hester. As noted, *supra*, the County and ECSO are also entitled to summary judgment against all claims insofar as they are brought against those Defendants under *Monell*. The negligent

supervision and retention claims, however, are not *Monell* claims but claims directly against Pitts and ECSO for their own negligence.

### E. Miscellaneous Motions

The Court grants the Motion to Seal (ECF No. 84) and the Motion to Extend Time (ECF No. 89) to file the relevant motion, and denies the Motion for Leave to File Opposition Under Seal (ECF No. 96) as moot. The Court grants the Motion for Leave to File Opposition Under Seal (ECF No. 114) but denies the Motion to File Excess Pages (ECF No. 113). The Court will consider the first thirty pages of the relevant opposition.

The Court grants the Motion for Certification Order Declaring that Defendants' Interlocutory Appeals are Frivolous (ECF No. 105). A court may make such a certification and proceed to trial where a qualified immunity argument is frivolous or waived. *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992) ("Should the district court find that the defendants' claim of qualified immunity is frivolous or has been waived, the district court may certify, in writing, that defendants have forfeited their right to pretrial appeal, and may proceed with trial."). In this case, although the arguments on the merits of the qualified immunity issue are not necessarily frivolous—the Court need not determine that issue—the Court granted the relevant motion not only on the merits but also upon the independent ground of failure to timely respond, i.e., waiver.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 67) is GRANTED IN PART and DENIED IN PART. The motion is granted as to *Monell* liability against the County and ESCO but is otherwise denied.

IT IS FURTHER ORDERED that the Motions to Strike (ECF Nos. 75, 76) are GRANTED and the Supplemental Complaint is DISMISSED.

IT IS FURTHER ORDERED that the Motion to Strike (ECF No. 77) is DENIED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 79) is GRANTED IN PART and DENIED IN PART. The motion is granted as to *Monell* liability against the County and ESCO but is otherwise denied.

IT IS FURTHER ORDERED that the Motions for Summary Judgment (ECF Nos. 87, 88) are GRANTED IN PART and DENIED IN PART. The Court grants summary judgment to all Defendants on the false imprisonment and negligent hiring claims, grants partial summary judgment on the defamation claim (Plaintiff is not a public figure, but the alleged defamatory statements address matters of public concern), grants summary judgment to the County on the negligent retention and supervision claims, and grants summary judgment as to *Monell* liability against the County and ESCO, but otherwise denies the motion.

IT IS FURTHER ORDERED that the Motion (ECF No. 82) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the Motion to Seal (ECF No. 84) and Motion to Extend Time (ECF No. 89) are GRANTED.

IT IS FURTHER ORDERED that the Motion for Leave to File Opposition Under Seal (ECF No. 96) is DENIED as moot.

IT IS FURTHER ORDERED that the Motion for Certification Order Declaring that Defendants' Interlocutory Appeals are Frivolous (ECF No. 105) is GRANTED. The Court CERTIFIES that defendants have forfeited their right to pretrial appeal of the qualified immunity issue via waiver. *See Chuman*, 960 F.2d at 105; Local R. 7-2(d). The Court does not opine as to whether the arguments on appeal are substantively frivolous.

IT IS FURTHER ORDERED that the Motion to Stay (ECF No. 108) is DENIED.

IT IS FURTHER ORDERED that the Motion for Leave to File Excess Pages (ECF No. 113) is DENIED.

1    IT IS FURTHER ORDERED that the Motion for Leave to File Opposition Under Seal
2 (ECF No. 114) is GRANTED.

3    IT IS FURTHER ORDERED that the Clerk shall correct the electronic docket to reflect
4 that no Defendants were terminated as a result of the filing of the "Amended Complaint" (ECF
5 No. 71). Notwithstanding its erroneous title in the electronic docket, that pleading was not in
6 fact an amended complaint but a supplemental complaint. A supplemental complaint is different
7 from an amended complaint. Unlike an amended complaint, which changes or adds allegations
8 of events occurring before the original complaint is filed, a supplemental complaint adds
9 allegations based upon events occurring after the original complaint is filed. Am amendment to a
10 complaint that omits claims or defendants effectively abandons or terminates them, respectively.
11 But a supplement to a complaint does not affect the original complaint; the two pleadings are
12 concurrently operative.

13    IT IS SO ORDERED.
14 Dated this 9th day of July, 2013.

_____
ROBERT C. JONES
United States District Judge