1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                       **DISTRICT OF NEVADA**

8

RICHARD PIKE,                          )
9                                       )
                    Plaintiff,          )
10                                      )        3:12-cv-00283-RCJ-VPC
         vs.                            )
11                                      )
J. BRAD HESTER et al.,                  )              **ORDER**
12                                      )
                    Defendants.         )
13   ─────────────────────────────────  )

14        This case arises out of alleged defamation, illegal searches and seizures, and general

15   harassment of an Elko County employee by several sheriff's deputies because of a private dispute

16   between the employee and a sheriff's deputy.

17   **I.    FACTS AND PROCEDURAL HISTORY**

18        **A.    The Parties**

19        Plaintiff Richard Pike was employed by Defendant Elko County (the "County") as the

20   Director of the City of Jackpot Recreation Center (the "Center"). (Compl. ¶ 10, May 25, 2012,

21   ECF No. 1).  Plaintiff's supervisor was the Director of Elko County Public Works, Mr. Lynn

22   Forsberg, who is not a party to this action. (*See id.* ¶ 19).  Defendants J. Brad Hester and Sean

23   Munson are employed by the County as deputy sheriffs with Defendant Elko County Sheriff's

24   Office ("ECSO"). (*Id.* ¶¶ 11–12).  Defendants Rick Keema and Jim Pitts are also employed by

25   the County and ECSO as the Under-Sheriff and Sheriff, respectively, and they are alleged to be

1   "officers" of the County as that term is used in Section 32 of the Nevada Constitution and final

2   policymakers for the purposes of municipal liability claims under 42 U.S.C. § 1983. (*See id.*

3   ¶¶ 13–14).  Pike and Hester have a history of animosity arising out of Pike's previous supervision

4   over Hester's minor child in Pike's capacity as assistant coach of a high school football team

5   during the Fall of 2008. (*See id.* ¶ 18).

6          **B.      The First Unlawful Search**

7          Plaintiff has had an office at the Center since about September 2007, where he keeps

8   personal affects such as photographs. (*Id.* ¶¶ 21–23).  In or about August 2011, Deputy Hester

9   (who was at that time a sergeant), accompanied by Deputy Munson and non-party Deputy Mike

10  Moore, unlocked one of the outer doors of the Center and searched the Center without a warrant,

11  based upon the false pretense that Plaintiff was selling the illegal drug known as "ecstasy" to

12  school children. (*See id.* ¶¶ 27–28, 34).  Once inside the Center, Hester ordered Moore to conduct

13  a dog sniff throughout the building. (*Id.* ¶ 29).  During the dog sniff, Hester unlocked the door to

14  Plaintiff's office and searched it, including Plaintiff's desk, without a warrant. (*Id.* ¶¶ 30, 34).

15  During the search, Hester seized an envelope from Plaintiff's desk containing $500 that non-

16  party James Ward had left with Plaintiff to be given to Plaintiff's God-son, Cody Ward, for travel

17  expenses. (*Id.*).  Hester then ordered Moore to perform a dog sniff of Plaintiff's office, and the

18  dog did not react to anything in Plaintiff's office. (*Id.* ¶ 31).  Hester then asked Moore if he were

19  "sure" there was nothing in the office and asked him to perform another sniff "right here,"

20  pointing to Plaintiff's filing cabinet. (*Id.*).  Moore complied, and again the dog did not react.

21  (*Id.*).  Plaintiff did not have any illegal drugs, but he suspects that Hester planted illegal drugs,

22  i.e., ecstasy, during the search, and that the dog simply failed to react to them. (*See id.* ¶ 32).

23         In or about October 2011, ECSO informed Plaintiff of the August 2011 search. (*Id.* ¶ 38).

24  Plaintiff presented a grievance to non-party ECSO Lieutenant Marvin Morton about the search,

25  and Morton promised to "look into it." (*Id.* ¶ 39).  Plaintiff alleges that Under-Sheriff Keema's

1   investigation into the illegal search on behalf of ECSO was intentionally deficient. (*See id.* ¶ 40).

2   However, Sheriff Pitts and Under-Sheriff Keema ultimately "sustained" the investigation,

3   meaning they found that an illegal search had occurred; still, as is their usual custom and

4   practice, they refused to properly punish Hester, but rather downplayed his illegal conduct in

5   order to shield him from civil liability and criminal prosecution, giving him only a written

6   reprimand and three days unpaid leave. (*Id.* ¶ 41).

7          **C.**    **The Second Unlawful Search**

8        On or about October 25, 2011, Munson, accompanied by non-party former Deputy Steve

9   Church, while in uniform, and without a warrant, picked the lock to an exterior door of the

10  Center in order to train Church how to break into the Center. (*Id.* ¶ 43).  Munson and Church got

11  trapped in the Center when a door locked behind them that they could not reopen, so they called

12  Moore to free them. (*Id.* ¶ 44).  Munson had broken into the Center multiple times in the past in

13  order to teach deputies how to break into buildings. (*Id.* ¶ 45).  Plaintiff consented to neither the

14  October 25, 2011 search nor the August 2011 search, and Forsberg did not authorize either of

15  them. (*Id.* ¶¶ 36–37, 46–47).

16         **D.**    **Hester's Defamation of Plaintiff**

17       Hester ordered the illegal August 2011 search of the Center based upon the false pretense

18  that Plaintiff was selling the drug "ecstasy" to schoolchildren, which claim Hester made to

19  Forsberg, Munson, and Moore. (*Id.* ¶ 48–50).  On September 22, 2011, Hester went to the office

20  of the Dean of Students and Athletic Director of Jackpot Combined School Kim Smith, to talk

21  about Plaintiff and Jackpot Combined School Football Coach Jorge Perez. (*Id.* ¶ 51).  At the

22  meeting, Hester maliciously told Smith that Plaintiff was a "pot head," "one of Jackpot's biggest

23  druggies," and "just threw his bong and pipe away a couple of weeks ago." (*Id.* ¶ 52).  Hester

24  made these allegations in order to have Plaintiff removed as Head Coach of the Jackpot Football

25

1   Team so that Hester could secure that position for himself. (*Id.* ¶ 53).[1]  The official letter in

2   which Smith memorialized Hester's allegations has since been widely disseminated, adversely

3   affecting Plaintiffs personal and professional reputation. (*Id.* ¶¶ 54–55).  In or about October

4   2011, Plaintiff and James Ward met with Lieutenant Morton to present a grievance concerning

5   Hester's defamatory statements, and Morton promised to "look into it." (*Id.* ¶ 61).  Plaintiff

6   believes that Morton conducted an internal affairs investigation, but Pitts, Keema, ECSO, and the

7   County took no action against Hester as a result. (*Id.* ¶¶ 62–63).

8   **E.   Hester's Harassment and Plaintiff's Protective Orders Against Hester**

9       After ECSO began the internal affairs investigation of Hester, Hester began driving his

10   ECSO vehicle to Plaintiff's place of residence and work up to seven times a day over the span of

11   several months in order to stop and stare at Plaintiff in a hostile and threatening manner. (*Id.*

12   ¶ 64).  Hester did this in order to make Plaintiff fear for his life and safety, as well as the lives

13   and safety of those around him. (*Id.* ¶ 65).

14       On November 15, 2011, Plaintiff filed an application for an Order of Protection Against

15   Stalking, Aggravated Stalking, or Harassments against Hester with the Elko County Justice

16   Court. (*Id.* ¶ 68).  Judge Al Kacin of that court entered a Temporary Order for Protection (the

17   "First TOP") that same day. (*Id.*).  At the December 12, 2011 hearing on the application, at least

18   nine witnesses testified, and Judge Kacin later entered an Extended Order of Protection (the

19   "First EOP"), finding by a preponderance of the evidence that Hester had stalked Plaintiff in

20   violation of Nevada Revised Statutes ("NRS") section 200.575(1). (*Id.* ¶ 69).  Judge Kacin

21   specifically found: (1) Plaintiff felt frightened and intimidated by Hester's conduct, including the

22   illegal search of his office and the "stop and stare" incidents; (2) Hester's conduct would have

23

24   _____

        [1]Plaintiff may have meant to allege that he was the Assistant Coach at this time. (*See id.*
25   ¶ 18 (noting that in the Fall of 2008, Plaintiff was the Assistant Coach); *id.* ¶ 51 (noting that
    Perez was the Coach at the time of the September 22, 2011 meeting)).

1   intimidated a reasonable person; and (3) Hester did not have lawful authority to search Plaintiff's

2   office and that the search was colored by Hester's animosity towards Plaintiff. (*Id.*).   On March

3   2, 2012, Plaintiff filed a second application for an Order of Protection Against Stalking,

4   Aggravated Stalking, or Harassments against Hester with the Elko County Justice Court. (*Id.*

5   ¶ 70).   Judge Barbara Nethery of that court entered a Temporary Order for Protection (the

6   "Second TOP") that same day. (*Id.*).

7           **F.      The Present Case**

8           Plaintiff sued the County, ECSO, and Hester, Munson, Keema, and Pitts in their official

9   and individual capacities in this Court on ten causes of action: (1) Fourth Amendment violations

10  pursuant to 42 U.S.C. § 1983 (all Defendants); (2) Defamation (Hester); (3) False Imprisonment

11  (Hester); (4) Intentional Infliction of Emotional Distress ("IIED") (Hester); (5) Conversion

12  (Hester); (6) Invasion of Privacy (Hester and Munson); (7) Negligent Hiring (Pitts, ECSO, and

13  the County); (8) Negligent Retention (Pitts, ECSO, and the County); (9) Negligent Supervision

14  (Pitts, ECSO, and the County); and (10) Respondeat Superior (ECSO and the County).   The

15  County and Hester jointly moved to dismiss, and the Court denied the motion.   Plaintiff moved

16  for offensive summary judgment as to certain issues adjudicated in the First EOP and Judge

17  Nethery's March 28, 2012 Extended Order for Protection (the "Second EOP").   The Court

18  granted the motion in part on March 5, 2013, ruling that certain findings by those judges could

19  not be relitigated.   Defendants moved to preclude the admission of expert testimony by James

20  Andre Boles.   The Court granted that motion in part and denied it in part.   Plaintiff filed two

21  motions for offensive summary judgment and a motion for leave to amend the Complaint.   On

22  April 26, 2013, the Court denied summary judgment to Plaintiff on the IIED claim, granted

23  summary judgment on the qualified immunity issue, and therefore also on his Fourth

24  Amendment claim, and granted Plaintiff leave to file a supplemental complaint.   Defendants

25  have filed an interlocutory appeal on the denial of qualified immunity.   Plaintiff filed a

1   Supplemental Complaint ("SC").[2]

2   On July 9, 2013, the Court ruled on fifteen motions.  The Court granted summary

3   judgment to the County and ESCO as to the IIED claim, but noted that Hester would not be

4   entitled to summary judgment against such claims if he had so moved.  The Court denied

5   summary judgment against the defamation and IIED claims under Nevada's anti-SLAPP statute.

6   The Court denied summary judgment against the Fourth Amendment and substantive due process

7   claims.  The Court granted summary judgment against the false imprisonment claim but denied it

8   against the claim for intrusion upon seclusion.  The Court further ruled that as to the defamation

9   claim, Plaintiff would have to prove negligence and falsity by a preponderance of the evidence to

10  recover any provable special damages and would have to prove malice by clear and convincing

11  evidence in order to recover presumed or punitive damages.  The Court granted summary

12  judgment to Defendants on the negligent hiring claim but denied summary judgment on the

13  negligent retention and negligent supervision claims against Pitts and ECSO.  The Court granted

14  summary judgment to the County on all of those claims, however, as well as against any *Monell*

15  claims.  The Court refused to stay the trial because it ruled that the right to interlocutory appeal

16  of the qualified immunity issue had been waived.  A trial has not yet been set, however.  Finally,

17  the Court struck the SC upon Defendants' motions, for the following reasons:

18          Defendants note that the SC is materially different from the proposed
        supplemental complaint Plaintiff presented to the Court and requested leave to file.
19      *Compare* Order 10:13–14, Apr. 26, ECF No. 66 ("Plaintiff may file the supplemental
        complaint *in the form it exists as attached to the present motion* [(ECF No. 58-1, at
20      8) (listing claims against the County and Robert Stokes for First Amendment
        Retaliation, Race/National Origin Discrimination, and Family and Medical Leave Act
21      Interference)]." (emphasis added)), *with* Suppl. Compl. (listing those same claims
        against the County, Stokes, and Hester).  The Court grants the motion and dismisses
22      the SC in its entirety, without leave to amend, for failure to comply with the Court's
        order under Rule 41.  When a party requires leave and receives it, it receives leave

23

24          [2]The SC was properly entitled as a "Supplemental Complaint" but appeared as an
        "Amended Complaint" in the electronic docket, perhaps because of administrative limitations in
25      the CM/ECF system or Plaintiff's error in entering the motion electronically.

1   only to do what the Court permits.  The Court was clear—although counsel has an
    ethical duty to follow the rules even in the absence of a specific admonition—that
2   Plaintiff only had leave to file the SC in the form in which he had presented it to the
    Court.  Plaintiff added Hester as a Defendant without leave of the Court.  The Court
3   will not tolerate the parties' attempting to take more than is given.  This
    practice—attempting to "sneak" things past the Court—is dishonest and frankly
4   childish, and it reflects poorly on the legal profession.  If counsel wished to
    supplement the Complaint in additional ways for which he required additional leave,
5   it would have been a simple matter for him to have requested it.

6   (Order 10:1–17, ECF No. 128).  Plaintiff recently asked the Court to reconsider striking the SC

7   but has since moved to withdraw the motion given the stay pending appeal.

8   **II.   DISCUSSION**

9          The Court grants the motion to withdraw but indicates it would be inclined to deny the

10  motion to reconsider.  Plaintiff argues that his previous attorney (Mr. Dickerson, who is currently

11  suspended for one year due to multiple unrelated malfeasances) inadvertently filed the wrong

12  version of the SC.  The motion is untimely.  Even assuming the overbroad SC was in fact filed

13  inadvertently—a claim the Court discredits,[3] especially coming from Mr. Dickerson—the motion

14  to reconsider based on inadvertence is simply untimely. *See* Fed. R. Civ. P. 60(b)(1), (c)(1).

15  ///

16  ///

17  ///

18  ///

19

20          [3]The first, overbroad version of the SC was dated April 29, 2013, the same date it was
21  filed, and it was filed in pdf format.  The "corrected" version of the SC filed on May 5, 2013 was
    dated April 2, 2013.  That was the version Plaintiff originally requested leave to file via his April
22  2, 2013 motion for leave.  However, the "corrected" version filed on May 5, 2013 was for some
    reason not simply a clean pdf copy of the original proposed SC but a copy of the scanned copy of
23  the SC that Defendants had attached to their motion to strike.  In any case, it is fairly clear that
    the first, overbroad version of the SC Plaintiff filed was not some older version accidentally
24  selected from the cloud, as Plaintiff argues now, but that it was in fact a much newer version
    created right as it was filed, and that Mr. Dickerson's precise intention was to "ignore the
25  confines of the Court's leave to amend."

1

**CONCLUSION**

2      IT IS HEREBY ORDERED that the Motion to Withdraw (ECF No. 138) is GRANTED.

3      IT IS FURTHER ORDERED that the Clerk shall TERMINATE the Motion to

4   Reconsider (ECF No. 137).

5      IT IS SO ORDERED.

6   Dated this 23rd day of October, 2014.

7      _____
        ROBERT C. JONES
8        United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25